FILED

2014 Dec-12  PM 02:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARK FOWLER,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:14-CV-968-RDP** |
| | } | |
| **GOODMAN MANUFACTURING** | } | |
| **COMPANY LP, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This matter is before the court on Defendants' Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("FAC").  (Doc. # 32).  The Motion has been fully briefed.  (Docs. # 33, 37, and 43).  For the reasons discussed below, the court concludes the motion is due to be granted.

### I.      Background

Plaintiff purchased his house in May 2009.  (Doc. # 28 at ¶ 73).  After reviewing product literature and marketing materials contained on Defendants' website, he had a Goodman HVAC Unit installed in his home that he purchased from Buckner Plumbing & Heating Co., Inc. ("Buckner Plumbing"), an authorized dealer and warranty servicer for Goodman HVAC Units. (Doc. # 28 at ¶¶ 10, 73-74).  The cost of the HVAC Unit was approximately $3,800.  (Doc. # 28 at ¶ 74).

Plaintiff alleges that Defendants' website and/or marketing materials contained the following statements:

- LEGENDARY Goodman Quality

- Refreshingly Affordable Home Comfort

- The Goodman brand has a central air conditioning system that is perfect for your home — at a refreshingly affordable price. Even on the hottest days of the year, you can keep your home cool and comfortable while enjoying low energy costs with a high efficiency Goodman brand air conditioner. Don't choose between affordability, durability, and optimum cooling comfort. Install a Goodman brand air conditioner and get all three — and what we believe to be the best warranty protection in the heating and cooling industry.

- Building our products to Harold's standards, and protecting those products with some of the best limited warranties in the industry, has helped to make the Goodman brand widely recognized as a leading brand in the residential and light commercial heating, ventilation and air conditioning industry today.

- Commitment to Quality Engineering Always in pursuit of the highest performance and efficiency, our engineers are constantly evaluating the latest and most reliable technology and applying it to every Goodman brand air conditioner.

- You've taken care to select reliable, long-lasting heating and cooling equipment for your household. Take that attention to quality one step farther by choosing a Goodman® brand evaporator coil or air handler for your system. Goodman brand evaporator coils and air handlers help ensure that your heating and cooling system will provide your family with reliable, efficient comfort for years to come.

- Enjoy the comfort of A Goodman Brand Air Conditioner Beat the summer heat with a Goodman brand DSXC18 R-410A Air Conditioner — a unit that provides you with high efficiency, reliable performance and quiet operation.

- We've been building quality Goodman brand air conditioning and heating equipment since 1982. Given our decades of experience in the heating and cooling business, our customers can be assured that Goodman brand air conditioning and heating systems meet the highest industry standards and are installed by some of the best and most experienced professionals in the industry.

- When you choose the Goodman brand, you can rest assured that you'll receive a refreshingly affordable product that's covered by what many consider to be the best product warranties in the heating and cooling industry.

(Doc. # 28 at pp. 16-18).[1]

---

[1] The contents of Defendants' website at the time Plaintiff conducted his research are not available in the record. However, the court notes that the current version of the website at http://www.goodmanmfg.com/ contains a link which allows the viewer to review the warranties on particular products as well as a link to permit registration of a product.

In the spring of 2010, within the first year of use, the Plaintiff's Unit experienced a leak which caused it to fail to produce cool air.  (Doc. # 28 at ¶¶ 10, 75).  Buckner Plumbing refilled it with refrigerant (Freon) at no charge to Plaintiff, but did not replace the coil.  (Doc. # 28 at ¶¶ 10, 75).

In June 2011, Plaintiff's Unit failed again.  Buckner Plumbing again recharged the Unit with new refrigerant, charging Plaintiff $200 for that service.  (Doc. # 28 at ¶¶ 10, 76).

In 2013, Plaintiff's Unit failed again, and again Plaintiff contacted Buckner Plumbing.  Buckner Plumbing removed and replaced the "inside" evaporator coil in Plaintiff's HVAC Unit, and recharged the unit (for the third time) with refrigerant.  (Doc. # 28 at ¶ 77).  Buckner Plumbing charged Plaintiff $600 for this service, and advised Plaintiff that (1) the new evaporator coil was provided without cost under the terms of the Goodman warranty, but (2) Buckner Plumbing's labor costs and the cost to recharge the refrigerant were not included in the warranty.  (Doc. # 28 at ¶ 77).

Plaintiff visited the Goodman website and sent an email to Defendants via a link that was provided "questioning why he had to pay $600 for labor and refrigerant after so many failures of his unit when he had a 10-year warranty."  (Doc. # 28 at ¶ 78).  Defendants did not respond to Plaintiff's email.  (Doc. # 28 at ¶ 81).

Several days after replacing the inside evaporator coil, the HVAC Unit still was not working properly.  Plaintiff again contacted Buckner Plumbing, who this time replaced the outside condenser coil, again at a cost of $600 for labor and refrigerant.  The replacement coil was provided under warranty (Doc. # 28 at ¶ 79), but there again was a charge for labor and refrigerant.

Air conditioners are sealed systems and in order to work properly a unit must contain coils that do not leak or allow refrigerant (*i.e.*, Freon, Puron, etc.) to escape. HVAC units work properly only if the refrigerant is completely sealed within the coils.  (Doc. # 28 at ¶ 28).  The copper coils in Defendants' HVAC Units prematurely cracked and developed holes, causing refrigerant leakage and causing the units not to function properly.  (Doc. # 28 at ¶¶ 29-31). Plaintiff asserts that, in connection with the Goodman HVAC unit he purchased, this was caused by formicary corrosion which is corrosion that occurs in copper based alloys.  (Doc. # 28 at ¶ 31).  In 2012, Defendants began using coils made from aluminum, a single metal option designed to combat premature coil failures.  (Doc. # 28 at ¶¶ 38-40).  The record demonstrates that evaporative coil corrosion was an "industry-wide" problem.  (Doc. # 28 at ¶ 48).

The warranty on Plaintiff's HVAC Unit is a "Limited Warranty."  (Doc. # 28-6).  By its express terms, it covers a period of ten years if the unit is registered within sixty (60) days of the original installation.[2]  Otherwise all parts are warranted for a period of five years.  (Doc. # 28-6). The Limited Warranty provides as follows: "As its only responsibility, and your only remedy, Goodman will furnish a replacement part, without charge for the part only, to replace any part that is found to be defective due to workmanship or materials under normal use and maintenance."  (Doc. # 28-6).  The Limited Warranty further states, "These warranties do not apply to labor, freight, or any other cost associated with the service, repair or operation of the unit."  (Doc. # 28-6).  Similarly, the Limited Warranty does not cover refrigerant.  (Doc. # 28 at ¶ 66).

## II.     Standard of Review

In most instances, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."

---

[2] The FAC does not allege that Plaintiff's unit was registered within sixty days of installation.

Fed. R. Civ. P. 8(a). Nevertheless, to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. To be plausible on its face, the claim must contain enough facts that "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

In addition, the court must construe pleadings broadly and resolve inferences in a plaintiff's favor. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006). However, the court need not accept inferences that are unsupported by the facts asserted in the complaint. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006). Ultimately, the well-pleaded complaint must present a reasonable inference from the facts it alleges that show a defendant is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). To survive Defendants' Motion, the allegations of Plaintiffs' Complaints must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1949.

III.     **Analysis**

Plaintiff's First Amended Class Action Complaint contains the following claims: (1) Reformation of Warranty; (2) Breach of Written Warranty; (3) Negligence; (4) Fraud by Suppression; and (5) Declaratory and Injunctive Relief.   The court addresses each of these claims, in turn.

A.      **Plaintiff's Reformation of Warranty Claim**

Plaintiff asserts a claim for reformation of warranty under Ala.Code 1975 § 7-2-302, which provides in relevant part:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Ala.Code 1975 § 7-2-302.

Plaintiff's argument is essentially that because the limited warranty at issue here contains limitations and exclusions, the warranty is unconscionable.   However, "'the clear public policy in Alabama is to allow a seller to limit the remedies available to a buyer.'" *Southland Farms, Inc. v. Ciba–Geigy Corp.*, 575 So.2d 1077, 1080 (Ala. 1991) (quoting *Puckett, Taul & Underwood v. Schreiber Corp.*, 551 So.2d 979, 983 (Ala. 1989)).   "An agreement between parties in a commercial transaction  ... 'may limit or alter the measure of damages recoverable under this article, *as by limiting the buyer's remedies* to return of the goods and repayment of the price *or to repair and replacement of nonconforming goods or parts ... .*'" *Puckett, Taul & Underwood*, 551 So.2d at 983 (quoting Ala.Code 1975 § 7-2-719(1)(a)) (emphasis added).   "Alabama law specifically allows parties, by agreement, to fashion their own remedies." *Moorer v. Hartz Seed Co.*, 120 F.Supp.2d 1283, 1294 (M.D. Ala. 2000) (citing Ala.Code 1975 § 7-2-719).

Under Alabama law, the court decides as a matter of law whether a contract clause is unconscionable. *Moorer,* 120 F.Supp.2d at 1294 (citing Ala.Code § 7-2-302). Alabama courts have deemed a warranty to fail of its essential purpose only in very narrow circumstances. As a general proposition, "[i]n order to show that the warranty failed of its essential purpose, [plaintiff] must either show that the dealer refused to repair or replace the [product] in accordance with the warranty or that the dealer did not repair the [product] within a reasonable time." *Ag–Chem Equipment Co. v. Limestone Farmers Co-op., Inc.*, 567 So.2d 250, 252 (Ala.1990); *see also Lipham v. General Motors Corp*., 665 So.2d 190, 192 (Ala.1995) (warranty fails of essential purpose when "either the dealer refused to repair or replace the malfunctioning component, or failed to do so within a reasonable time") (citation omitted). The idea behind this "failure of essential purpose" doctrine is that a seller cannot limit the buyer to certain specified remedies and then conduct itself in a manner negating the efficacy of those remedies. *See e.g., Ex parte Miller*, 693 So.2d 1372, 1379 n. 10 (Ala.1997) (explaining that "[t]he main point of this doctrine ... is to prevent a warrantor from limiting its customers solely to the remedy of repair after it has become obvious to reasonable persons that the warrantor cannot or will not repair the machine in compliance with the limited warranty").

In order to show that a warranty failed of its essential purpose, a plaintiff must present proof that the seller was unable or unwilling to abide by its promised remedies. *See, e.g., DaimlerChrysler Corp. v. Morrow*, 895 So.2d 861 (Ala. 2004) (warranty does not fail of essential purpose where defendant offered to replace defective truck with a new truck, but plaintiff rejected offer of replacement because new truck theoretically could fail); *Ag–Chem*, 567 So.2d at 252 (warranty did not fail of essential purpose where plaintiff never tendered engine to defendant for repair because it did not want defendant to repair it); *Feil v. Wittern Group, Inc*.,

7

784 So.2d 302, 311 (Ala.Civ.App. 2000) (concluding that express warranty requiring plaintiff to bear all shipping and installation costs did not fail of essential purpose were defendants never "failed or refused to supply [plaintiff] with replacement parts that he needed during the warranty period").

Here, in each instance where Plaintiff's HVAC Unit needed repair, it was repaired. When a defective part needed to be replaced, it was replaced. The Limited Warranty provided that there would be no cost to Plaintiff for the part, and the part was provided without cost. To be sure, Plaintiff was required to pay for labor and refrigerant whenever a part was replaced. But those charges were not covered by the Limited Warranty. And while every consumer would most certainly enjoy a warranty that did not charge for any aspect of a repair (*e.g.*, labor and refrigerant), generally, limited warranties do no operate in that fashion. Plaintiff has not alleged any facts tending to show that Defendants either failed or refused to supply Plaintiff with a needed replacement part.

Under Alabama law, the Limited Warranty's limitation on remedies is enforceable. Plaintiff has not alleged facts from which the inference can be drawn that the Limited Warranty failed of its essential purpose. Therefore, Plaintiff's Reformation of Warranty claim is due to be dismissed.

### B.   Plaintiff's Breach of Written Warranty Claim

Under Alabama law, a buyer must provide notice to a seller before suing for breach of warranty. Ala. Code § 7-2-607(3)(a). Notice is a condition precedent to any claim for breach of warranty. *Consolidated Pipe and Supply Co., Inc. v. Stockham Valves and Fittings, Inc.*, 365 So.2d 968 (Ala. 1978).

As another court in this district has concluded, "The Alabama Commercial Code explicitly makes notice a condition precedent to any claim of breach of warranty: '(3) Where a tender has been accepted: (a) The buyer must within a reasonable time after he discovers or should have discovered any breach *notify the seller of breach or be barred from any remedy.*'" *Smith v. Apple, Inc.*, 2009 WL 3958096 * 1 (N.D. Ala. 2009) (Acker, J.) (quoting Ala.Code § 7-2-607(3)(a)) (emphasis supplied); *see also Parker v. Bell Ford, Inc.*, 425 So.2d 1101, 1102 (1983) ("This court, on several occasions, has characterized notice, such as required by § 7-2-607, as a condition precedent to recovery.") (citing *Smith v. Pizitz of Bessemer, Inc.*, 271 Ala. 101, 122 So.2d 591, 592 (1960)).  "There is no distinction between implied warranties and express warranties insofar as this precondition is concerned.  Affirmatively pleading notice is critical to the stating of a claim for breach of warranty under Alabama law."  *Smith,* 2009 WL 3958096  at * 1 (citing *Hobbs v. Gen. Motors Corp.*, 134 F.Supp.2d 1277, 1285-86 (M.D. Ala. 2001) (noting that the filing of a lawsuit itself constitutes sufficient notice only if personal injuries are involved)).

Plaintiff has alleged that he sent an email to Defendants via a provided link "questioning why he had to pay $600 for labor and refrigerant after so many failures of his unit when he had a 10-year warranty."  (Doc. # 28 at ¶ 78).  However, while this communication questions the terms and scope of the Limited Warranty, it does not provide notice of a breach of warranty.  As this court has stated before, "[w]hat is required is notice of the alleged *breach of warranty*." *Selby v. Goodman Manufacturing Company LP, et al.,* N.D. Ala. Case No. 2:13-cv-02162-RDP, Doc. # 28 at 5).   Here, Plaintiff has not alleged that he gave notice of a breach of the warranty. Therefore, Plaintiff's breach of written warranty claim is due to be dismissed.

In addition to his failure to provide the required notice, there is an alternative reason why Plaintiff cannot advance this claim. He simply has not plausibly alleged that Defendants breached the Limited Warranty. Plaintiff asserts that the Warranty should have covered items that, by its very terms, it did not cover. Moreover, he also assumes that it warranted things that, by its very terms, it did not warrant. (Doc. # 28 at ¶¶ 100, 101). Even a cursory review of his allegations makes clear that Plaintiff has simply not alleged that Defendant failed to comply with the written terms of the Limited Warranty. The Alabama Supreme Court has held that the language of an express warranty to repair cannot be construed as a representation that a product is free of defects. *Hughes v. Hertz Corp.*, 670 So.2d 882 (Ala. 1995); *Rhodes v. General Motors Corp.,* 621 So.2d 945 (Ala.1993); *Tittle v. Steel City Oldsmobile GMC Truck, Inc*., 544 So.2d 883 (Ala. 1989). An express warranty to repair anticipates that defects may occur and that, if detected during the term of the warranty, they will be remedied under the terms of the warranty. *Hughes*, 670 So.2d at 886; *Rhodes*, 621 So.2d at 948. The fact that Plaintiff had to have his HVAC Unit repaired does not equate to a breach of the Limited Warranty at issue.

Nor does Plaintiff sufficiently assert a separate claim under the Magnuson-Moss Warranty Act ("MMWA"). He has merely referenced that statute in asserting his Breach of Written Warranty claim. (Doc. # 28 at ¶ 103). A MMWA claim is not independent of a state law breach of warranty claim. "'The [MWWA] does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law.'" *McCabe v. Daimler AG,* 948 F.Supp.2d 1347, 1364 (N.D. Ga. 2013) (quoting *Fedrick v. Mercedes–Benz USA, LLC*, 366 F.Supp.2d 1190, 1200 n. 14 (N.D. Ga. 2005) (in turn citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986))).

For the reasons noted above, Plaintiff's state law Breach of Written Warranty claim is due to be dismissed, and his MMWA claim must also be dismissed.

### C.    Plaintiff's Negligence Claim

Plaintiff's negligence claim alleges that Defendants had a duty to properly design and test their HVAC Units.  Plaintiff alleges that Defendants failed to use ordinary care in the design of their Units and did not perform adequate testing.  (Doc. # 28 at ¶¶ 109-10).  Defendant argues that Plaintiff's negligence claim is barred by both the statute of limitations and the economic loss rule.

"'The statutory period of limitations for negligence ... actions, found at Ala.Code 1975, § 6–2–38, is two years from the date the injury occurred ... . There is, however, no "discovery rule" [which may] to toll the running of the limitations period with respect to negligence ... actions ... .'"  *Utilities Bd. of City of Opp v. Shuler Bros., Inc.,* 138 So.3d 287, 292-93 (Ala. 2013) (quoting *Henson v. Celtic Life Ins. Co.*, 621 So.2d 1268, 1274 (Ala. 1993); *see also  Boyce v. Cassese*, 941 So.2d 932, 946 n. 2 (Ala. 2006) ("Alabama has no 'discovery rule' with respect to negligence ... actions that would toll the running of the limitations period."); *Singer Asset Finance Co. v. Connecticut General Life Insurance Co.*, 975 So.2d 375, 382 (Ala.Civ.App. 2007) (noting that "there is no 'discovery rule' for negligence claims that would toll the running of the statute of limitations from the time the cause of action was 'discovered' by the plaintiff"); *Williams v. Norwest Fin. Alabama, Inc*., 723 So.2d 97, 104 (Ala.Civ.App. 1998) ("Alabama has no 'discovery rule' with respect to negligence ... actions that would toll the running of the limitations period.").

As the Supreme Court of Alabama has held, "[a] cause of action 'accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon."  *Smith v. Medtronic, Inc.,*

607 So.2d 156, 159 (Ala. 1992) (citing *Garrett v. Raytheon Co.*, 368 So.2d 516 (Ala. 1979)) (containing an in-depth discussion of when a cause of action accrues for purposes of the statute of limitations).  "A party has a cause of action, and the statute of limitations begins to run, on the date the first legal injury occurs, but not necessarily from the date of the act causing the injury." *Smith,* 607 So.2d at 159 (citing *Brotherhood of Locomotive Firemen & Enginemen v. Hammett*, 273 Ala. 397, 140 So.2d 832 (1962)).  "That is, where the act complained of does not itself constitute a legal injury at the time, but the plaintiff's injury comes only as a result of, and in furtherance and subsequent development of, the act of the defendant, the cause of action 'accrues,' and the statutory period of limitations begins to run, when, and only when, the damages are sustained." *Smith,* 607 So.2d at 159 (some internal quotations omitted but quoting *Garrett*, 368 So.2d at 519 (in turn quoting *Kelly v. Shropshire*, 199 Ala. 602, 605, 75 So. 291, 292 (1917)). Generally, the period of limitations begins to run at the time of the first legal injury, whether or not the full amount of damages is apparent. *Smith,* 607 So.2d at 159.

Plaintiff's original Complaint in this action was filed on May 22, 2014.  (Doc. # 1).  But Plaintiff's FAC alleges his first legal injury occurred in 2010: "[i]n the spring of 2010, within the first year of use, the Plaintiff's Goodman HVAC Unit experienced a leak which caused the HVAC Unit to fail to produce cool air. Because the Goodman HVAC Unit, like any other, is a "closed" system, refrigerant could have been lost only due to a defect in the HVAC Unit."  (Doc. # 28 at ¶ 75).  Plaintiff's FAC alleges further injuries in 2011 and 2013.  (Doc. # 28 at ¶¶ 76-77).  However, Plaintiff's cause of action was complete upon the initial manifestation of legal injury — in 2010.  *See Chandiwala v. Pate Const. Co.,* 889 So.2d 540, 543-44 (Ala. 2004) (statutory period of limitations began to run for initial injury and for "damage developing subsequent to the initial legal injury.").  An increase in the amount of damage does not give rise

to a new cause of action. *Chandiwala,* 889 So.2d at 544; *B & B Props. v. Dryvit Sys., Inc.*, 708 So.2d 189 (Ala.Civ.App. 1997). Therefore, because it accrued in 2010, but this claim was not filed until 2014, Plaintiff's negligence claim is barred by Alabama's two-year statute of limitations.[3]

### D.    Plaintiff's Fraud by Suppression Claim

In most cases, a complaint adequately states a claim of relief by providing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Complaints that allege fraud, however, are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that the circumstances constituting fraud be plead with particularity. Fed.R.Civ.P. 9(b). It is well settled that alleging fraud with particularity requires a plaintiff to set forth "(1) precisely what statements were made in what documents or oral representations or what omissions or what were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted but quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)); *see also Cooper v.*

---

[3] Defendant also argues that Plaintiff's negligence claim is barred by the economic loss rule. In a similar case, this court held that where a plaintiff alleged that she had suffered mental anguish and a diminution in the value of her home, she stated a plausible negligence claim. *Selby v. Goodman Manufacturing Company LP, et al.,* N.D. Ala. Case No. 2:13-cv-02162-RDP, Doc. # 28 at 9). Here, Plaintiff has also alleged a diminution in the value of his home, and in his general prayer for relief he claims he suffered compensatory damages. In any event, because Plaintiff's negligence claim is time-barred, the court need not address whether certain damages claimed by Plaintiff may well be barred by the economic loss rule.

*Blue Cross and Blue Shield of Fla., Inc.*, 19 F.3d 562, 568 (11th Cir. 1994) ("Federal Rule of Civil Procedure 9(b) requires that fraud be pleaded with specificity. The plaintiff's complaint must allege the details of the [defendant's] allegedly fraudulent acts, when they occurred, and who engaged in them."). Therefore, regardless of its type, fraud claims must be supported by more than generalized allegations that the defendant acted fraudulently.

As the Alabama Supreme Court has recognized, "[t]he elements of a cause of action for fraudulent suppression are: (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury." *Lambert v. Mail Handlers Benefit Plan*, 682 So.2d 61, 63 (Ala. 1996). "A duty to communicate can arise from a confidential relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information, but mere silence in the absence of a duty to disclose is not fraudulent." *Jewell v. Seaboard Indus., Inc*., 667 So.2d 653, 658 (Ala.1995) (citations omitted).

Plaintiff alleges that Defendants were under a duty to disclose that their coils were defective "under laws requiring it not to engage in false and deceptive trade practices and because Defendants were in a superior position to know -- and did know -- the true state of the facts about the hidden defects." (Doc. # 28 at ¶ 119). Plaintiff also alleges that the duty arose because of "special circumstances." (Doc. # 28 at ¶ 119).

Defendants argue that this claim, like Plaintiffs' negligence claim, is barred by the two-year statute of limitations. They also alleged that Plaintiff has failed to adequately allege the existence of a duty to disclose.

Claims of fraudulent suppression are subject to a two-year statute of limitations. Ala.Code 1975, § 6–2–38( 1 ); *Foremost Insurance Co. v. Parham*, 693 So.2d 409, 417-21 (Ala.

1997).  A fraud claim accrues, and the running of the statutory limitations period commences, when a plaintiff discovers the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care. *Parsons Steel, Inc. v. Beasley*, 522 So.2d 253 (Ala. 1988); *Moulder v. Chambers*, 390 So.2d 1044 (Ala. 1980); *Jefferson County Truck Growers Ass'n v. Tanner*, 341 So.2d 485 (Ala.  1977).

The information allegedly suppressed by Defendants relates to Plaintiff's claim that their HVAC Units contained defective coils.[4]  Based upon Plaintiff's own pleadings here, it could be argued that in 2010 (or at least, 2011), Plaintiff should have discovered the defect at issue because his HVAC Unit required the addition of refrigerant.  Of course, the court must view the allegations of the FAC in the light most favorable to Plaintiff.  In that light, the court cannot say *as a matter of law* that Plaintiff discovered the alleged defect or the alleged fraud in 2010 or 2011.  It was not until 2013, well within the two year period prior to the filing of his original Complaint, that the allegedly defective part on the Unit was replaced.  Replacement of a part is a stronger indication to a lay person that there was a defect in the product.  Therefore, on this record, if there was a duty to disclose, the court cannot say as a matter of law that Plaintiff discovered the alleged fraud earlier than 2013.

However, while Plaintiff's suppression claim has avoided the swing of the statute of limitations ax on this motion, the court agrees with Defendants that Plaintiff has failed to adequately plead a factual basis giving rise to a duty to disclose on the part of Defendants.  "When the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested."

---

[4] Plaintiff also appears to argue that Defendant suppressed the lack of warranty coverage for refrigerant and labor  (Doc. # 28 at ¶ 120) and misrepresented that the warranty was a 10 year warranty.  (Doc. # 28 at ¶ 121).  However, the fact that the warranty was "Limited" and the terms of that warranty, including the fact that a consumer wanting ten years' coverage was required to register the Unit shortly after purchase are fairly and obviously disclosed on the Limited Warranty itself.  (Doc. # 28-6).

*Mason v. Chrysler Corp.*, 653 So.2d 951, 954-55 (Ala. 1995) (citing *Bama Budweiser of Montgomery, Inc. v. Anheuser–Busch Inc.*, 611 So.2d 238 (Ala.1992); *Norman v. Amoco Oil Co.*, 558 So.2d 903 (Ala.1990); and Ala.Code 1975, § 6–5–102).  Mere silence in the absence of a duty to disclose is not fraudulent."  *Jewell v. Seaboard Indus.*, 667 So.2d 653, 657-58 (Ala. 1995).

Plaintiff has not alleged facts which establish a confidential relationship.  His conclusory allegations regarding the existence of such a relationship are insufficient to state a plausible claim under *Twombly* and *Iqbal*.  As to Plaintiff's relationship with Defendants, he merely alleges that he "purchased one of the Defendants' HVAC Units after reviewing product literature and marketing materials contained on Defendants' website" from "an authorized dealer."  (Doc. # 28 at ¶¶ 73-74).

In three separate cases, the Alabama Supreme Court has held that, "without a specific inquiry from the purchasers, the defendant/sellers [have] no generalized obligation to disclose information regarding defects in [their] products."  *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So.2d 883, 892 (Ala. 2005) (citing *DaimlerChrysler Corp. v. Morrow*, 895 So.2d 861 (Ala. 2004); *Mason,* 653 So.2d at 954-55; and *McGowan v. Chrysler Corp.*, 631 So.2d 842 (Ala. 1994)).

In *Mason*, the plaintiffs' contacts with defendant Chrysler Corporation consisted primarily of their viewing national advertisements before they purchased the vehicle and their presenting the vehicle for repair.  *Mason*, 653 So.2d at 954.  The Alabama Supreme Court held as a matter of law that those facts were insufficient to give rise to a duty to speak.  *Id*. at 954-55.  Here, Plaintiff has alleged no more than what the Alabama Supreme Court held in *Mason* was

insufficient to give rise to a duty to speak.  Because Plaintiff has failed to adequately plead the first element of his Fraud by Suppression claim, that claim is due to be dismissed.

> **E.      Plaintiff's Request for Declaratory and Injunctive Relief**

To state a valid claim for injunctive relief, a plaintiff must show: "(1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest." *Thomas v. Bryant*, 614 F.3d 1288, 1317 (11th Cir. 2010).

Plaintiff argues that his Declaratory and Injunctive Relief claim requests relief not sought under his other claims.  However, to establish any right to declaratory and injunctive relief, a plaintiff must establish that he has "prevailed in establishing the violation of the right asserted in his complaint."  The only rights which Plaintiff contends were violated arose in connection with other claims in Plaintiff's FAC.  All of those other claims are due to be dismissed.  Therefore, so too is his claim for declaratory and injunctive relief.

Nor can Plaintiff window dress this claim as one for equitable relief.  "Where a party's legal remedies are time-barred, that party's concurrent equitable claims generally are barred under the concurrent remedy doctrine."  *National Parks and Conservation Ass'n, Inc. v. Tennessee Valley National Parks and Conservation Ass'n, Inc. v. Tennessee Valley Authority*, 502 F.3d 1316, 1326-27 (11th Cir. 2007) (citing *Cope v. Anderson*, 331 U.S. 461, 464 (1947); *Gilbert v. City of Cambridge*, 932 F.2d 51, 57 (1st Cir. 1991) (stating that "it is settled ... that where legal and equitable claims coexist, equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy"); *United Transp. Union v. Fla. E. Coast Ry. Co.*, 586 F.2d 520, 523-24 (5th Cir. 1978) (holding that, where both legal and equitable relief

17

are sought, the statute of limitations bars both).  Where a party no longer has any concurrent legal claim, time-barred or otherwise, the concurrent remedy doctrine bars an unmoored claim for equitable relief on those same claims.  *National Parks and Conservation Ass'n, Inc.,* 502 F.3d at 1326-27.

IV.  **Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's First Amended Class Action Complaint (Doc. # 32) is due to be granted.

A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this December 12, 2014.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE